### OHIO BRASS CO. v. HARTMAN ELECTRICAL MFG. CO.
### McTIGHE IMP. CO. v. SAME.

#### (District Court, N. D. Ohio, E. D. May 5, 1917.)

COURTS ☞347—FEDERAL COURTS—PLEADING—SET-OFF AND COUNTERCLAIM.

The purpose of the provision of equity rule 30 (201 Fed. v, 118 C. C. A. v) permitting a defendant in his answer to "set out any set-off or counterclaim against the plaintiff which might be the subject of an independent suit in equity against him" is to simplify pleading only, and not to create a new equity practice, and it does not authorize the setting out of any cause of action cognizable in equity, regardless of whether or not it is a proper subject of set-off or counterclaim.

In Equity. Suits by the Ohio Brass Company and by the McTighe Improvement Company against the Hartman Electrical Manufacturing Company. On motions to strike counterclaim from answers. Motions granted.

Brown, Nissen & Sprinkle, of Chicago, Ill., for plaintiffs.
Albert Lynn Lawrence, of Cleveland, Ohio, for defendant.

WESTENHAVER, District Judge. These two suits are based upon the same patent, alleging infringement by the defendant. The answers deny infringement and challenge the validity of the patent sued on. In addition thereto each answer pleads a counterclaim as follows:

"And this defendant pleads, by way of counterclaim, that the plaintiff individually and acting in conspiracy with its putative licensee, Ohio Brass Company, of Mansfield, Ohio, and others unknown to the defendant, has damaged and is damaging this defendant, by unlawful and unfounded threats of suit against its customers, and by unfair competitive methods and business practices, all with respect to said 'Simplex Bond,' to an extent not yet ascertained by this defendant, but here alleged in excess of the statutory amount of three thousand dollars ($3,000), exclusive of interest and costs, and it therefore prays an accounting and recovery of the actual damages incurred."

These motions are to strike out this counterclaim, and three grounds are urged in support thereof:

(1) That these allegations are not sufficient to state an equitable cause of action.

(2) That the facts contained therein, even if amplified and properly pleaded, would state an independent cause of action in equity and not a counterclaim within the meaning of the second part of new equity rule 30 (201 Fed. v, 118 C. C. A. v).

(3) That the cause of action therein contained being cognizable in a federal court only because of diversity of citizenship, and the plaintiff not being an inhabitant of the Northern district of Ohio, but of New Jersey, this court cannot take jurisdiction without the consent or waiver by plaintiff of his privilege of being sued in his home district.

An exhaustive examination of the authorities was made by me shortly after the argument and submission of these motions. I have found them to be in conflict, and have withheld an announcement, in the hope that I might find time to write and file a suitable opinion. However, not finding sufficient time so to do, I am now filing this announcement and memorandum in order not to delay parties in preparing for trial.

Manifestly the first objection is well taken. The counterclaim, as pleaded, consists primarily of a few conclusions of law and fact. It does not set forth operative facts sufficient to constitute a cause of action.

I am of opinion that the motions should also be sustained on the second ground. It is upon this proposition that the authorities are in hopeless conflict, and an attempt to reconcile them is manifestly impossible. A large number of federal judges construing and interpreting the latter part of new equity rule 30 have reached a conclusion which requires this motion to be granted, while a number of others have reached the opposite conclusion. I am of opinion that the weight of reason and argument is with the former group, and have decided to adopt that ruling and adhere to it until a different ruling is made by some tribunal whose authority is controlling upon me.

The line-up of federal judges in favor of the ruling now being made is as follows: In Terry Steam Turbine Co. v. B. F. Sturtevant Co. (D. C.) 204 Fed. 103, Circuit Judge Dodge; in Williams Patent Crusher & P. Co. v. Kinsey Mfg. Co. (D. C.) 205 Fed. 375, District Judge Hazel; in Vacuum Cleaner Co. v. American Rotary Valve Co. (D. C.) 208 Fed. 419, Circuit Judge Lacombe; in Adamson v. Shaler (D. C.) 208 Fed. 566, District Judge Geiger; in Atlas Underwear Co. v. Cooper Underwear Co. (D. C.) 210 Fed. 347, District Judge Geiger (reiterating his holding in 208 Fed. 566); in Klauder-Weldon Dyeing Machine Co. v. Giles et al. (D. C.) 212 Fed. 452, Circuit Judge Dodge (reiterating holding in 204 Fed. 103); in Sydney v. Mugford Printing, etc., Co. (D. C.) 214 Fed. 841, District Judge Thomas; and in Christensen v. Westinghouse Traction Brake Co. (D. C.) 235 Fed. 899, District Judge Thomson. The best statement of the reasons for the holding made in these cases is by Judge Thomson in the case last cited.

The line-up against the ruling is as follows: In Marconi Wireless Telegraph Co. v. National, etc., Co. (D. C.) 206 Fed. 295, District Judge Chatfield; in Salt's Textile Mfg. Co. v. Tingue Mfg. Co. (D. C.) 208 Fed. 156, District Judge Martin; in Electric Boat Co. v. Lake Torpedo Boat Co. (D. C.) 215 Fed. 377, District Judge Rellstab.

The contention is made that in United States, etc., Bolt Co. v. Kroncke Hardware Co., 234 Fed. 868, 148 C. C. A. 466, the Circuit Court of Appeals, Seventh Circuit, adheres to the ruling of the cases last cited. The Circuit Court of Appeals was reviewing the judgment of Sanborn, District Judge, in the same case, reported 216 Fed. 186,

and reversed Judge Sanborn's decision on jurisdictional grounds only. A careful examination of both opinions convinces me that attention was given almost entirely to the jurisdictional question involved, namely, whether a counterclaim might thus be brought into the case without diversity of citizenship, or some other grounds of federal jurisdiction, and not upon the true meaning and construction of new equity rule 30. I do not regard the decision as giving any substantial support to the defendant's position.

That part of new equity rule 30 involved is as follows:

"The answer must state in short and simple form any counterclaim arising out of the transaction which is the subject-matter of the suit, and may, without cross-bill, set out any set-off or counterclaim against the plaintiff which might be the subject of an independent suit in equity against him, and such set-off or counterclaim, so set up, shall have the same effect as a cross-suit, so as to enable the court to pronounce a final judgment in the same suit both on the original and cross-claims."

This rule was intended to simplify equity pleading, and not to revolutionize equity practice. All agree that it cannot enlarge the jurisdiction of a federal court, or of a court of equity. The set-off or counterclaim must manifestly, therefore, be one cognizable in a court of equity; that is, it must be such as could be made the subject of an independent suit in equity. Manifestly, also, the jurisdiction of the federal court cannot be enlarged by this rule. Obviously, it seems to me, the purpose of this rule was to simplify pleading only, and not to create a new equity practice, and thus permit, under the guise of setting up a set-off or counterclaim, the bringing forward of any matter which will make an independent cause of action cognizable in equity.

Attention is directed to the permissive, or latter, part of the rule. The defendant may, without cross-bill, set up any set-off or counterclaim, and a pleading in that form shall have the same effect as a cross-suit. The intention, it seems obvious, was to dispense with the formal cross-bill, or the formal cross-suit, but not to change or to enlarge the practice and jurisdiction of equity.

The reply is made that this construction restricts the permissive part of the rule, so that it has no greater effect than the mandatory or preceding part. This does not follow. The mandatory counterclaim is obviously a substitute for the common-law remedy of recoupment, and is intended to be strictly so limited. The permissive part is intended to provide for the set-off and the statutory counterclaim previously cognizable in equity. Equity had jurisdiction whenever equitable reasons existed to entertain a suit to protect the right of set-off. A counterclaim is of statutory origin and has no well-defined meaning. Its nature and extent differ in different states. One characteristic of a counterclaim common to all jurisdictions, however, is that it is a matter to be brought forward as an answer to and in extinguishment of the claim made by the plaintiff, and it differs from the common-law recoupment chiefly in that the defendant, asserting a statutory counterclaim, is permitted, not only to extinguish the plaintiff's claim, but to recover judgment for the excess, if any, due him.

The minority reasoning construes set-off or counterclaim as synonymous with cause of action cognizable in equity, as these words are

used in equity rule 26 (201 Fed. v, 118 C. C. A. v). If the framers of this rule had intended this consequence, they could easily have expressed that intention by using the words "cause of action cognizable in equity," instead of "a set-off or counterclaim which is the subject of an independent suit in equity." There is a wide difference between a cause of action cognizable in equity and a set-off or counterclaim which may be the subject of an independent suit in equity. The minority reasoning ignores this distinction. It breaks down all difference between a cause of action cognizable in equity and a set-off or counterclaim.

Such in brief are the reasons making for the majority contention, and which have led me to sustain the motions on this ground. This conclusion renders unnecessary a consideration of the third ground. An exception may be noted on behalf of the defendant to this ruling.